Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 564 | **DATE** | 10/16/2002 |
| **CASE TITLE** | CAPITAL CITY FINANCIAL GROUP vs. COUNTY OF COOK | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. Capital City Financial Group's motion for partial summary judgment is denied; and Cook County's motion for summary judgment is granted as to counts I and II and denied as to count III.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | OCT 21 2002 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | 56 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| LG | courtroom deputy's initials | date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



OCT 21 2002

| | |
|---|---|
| CAPITAL CITY FINANCIAL GROUP, INC., an Indiana corporation,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF COOK, an Illinois corporation,<br><br>Defendant. | Case No. 01 C 564<br><br>Honorable John W. Darrah |

OCT 21 2002

## MEMORANDUM OPINION AND ORDER

Plaintiff, Capital City Financial Group, Inc. ("Capital City"), filed a three-count complaint against Defendant, County of Cook ("Cook County"), alleging breach of contract, account stated, and fraudulent or negligent misrepresentation. Cook County moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. Capital City moves for summary judgment on Count III, fraudulent misrepresentation. For the reasons that follow, Cook County's Motion for Summary Judgment is granted in part and denied in part; and Capital City's Motion for Partial Summary Judgment is denied.

## LEGAL STANDARD

Summary judgment is appropriate when there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 150 (7th Cir. 1994). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Thus, although the moving party on a



motion for summary judgment is responsible for demonstrating to the court why there is no genuine issue of material fact, the non-moving party must go beyond the face of the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file to demonstrate, through specific evidence, that there remains a genuine issue of material fact and show that a rational jury could return a verdict in the non-moving party's favor. *Celotex*, 477 U.S. at 322-27; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254-56 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994).

Disputed facts are material when they might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 507-08 (7th Cir. 1992). When reviewing a motion for summary judgment, a court must view all inferences to be drawn from the facts in the light most favorable to the opposing party. *Anderson*, 477 U.S. at 247-48; *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999). However, a metaphysical doubt will not suffice. *Matsushita*, 475 U.S. at 586. If the evidence is merely colorable or is not significantly probative or is no more than a scintilla, summary judgment may be granted. *Anderson*, 477 U.S. at 249-250.

## BACKGROUND

The undisputed facts taken from the parties' Local Rule 56.1(a) & (b) statements of material facts (referred to herein as "Pl.'s 56.1" and "Def.'s 56.1"[1]) and exhibits are as follows.

Capital City is an Indiana corporation with its principal place of business in Indiana. (Def.'s

---

[1] The Court will not consider unsupported statements of fact or general "denials" that do not contain references to the factual record, as required by Local Rule 56.1(3). *See Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 527 (7th Cir. 2000) (strict compliance with the local rules governing summary judgment is upheld given the importance of local rules that structure the summary judgment process). It is deemed as admitted all 56.1 responses which fall into this category.

56.1 ¶ 1; Pl.'s 56.1 ¶ 1.) William Brooks ("Brooks") is the general manager of Capital City. (Pl.'s 56.1 ¶ 2.)

Capital City is a financing/funding company that provides financing to various entities, including the factoring of such entities' accounts receivable. (Pl.'s 56.1 ¶ 3.) Factoring is the purchase of receivables from companies at a discounted value. (Def.'s 56.1 ¶ 9; Pl.'s 56.1 ¶ 3.) Factoring is an unregulated business. (Def.'s 56.1 ¶ 8.) Prior to purchasing an account receivable, Capital City sends out an invoice verification to a person that it assumes to be authorized to verify that the work has been performed and that the invoice is due and payable. (Def.'s 56.1 ¶ 12.) When Capital City purchases an account receivable, it sends the client a "Schedule A", which contains a concurrence that the matters attached thereto represent what Capital City is buying, for the client's signature. (Def.'s 56.1 ¶ 10.) The "Schedule A" constitutes a separate contract each time Capital City purchases a particular invoice. (Def.'s 56.1 ¶ 10.) Capital City considers its protection to be the signature of the person who verifies that the invoice will be paid. (Def.'s 56.1 ¶ 13.)

Cook County is a body politic and corporate. (Def.'s 56.1 ¶ 2.) Cook County owns and operates Provident Hospital ("Provident"), which provides medical facilities, personnel and services to the general public for the care and treatment of physical and mental diseases. (Def.'s 56.1 ¶ 23; Pl.'s 56.1 ¶ 5.) Provident is located at 500 East 51st Street in Chicago, Illinois. (Def.'s 56.1 ¶ 24.)

At all relevant times, Earl Bell ("Bell") was Provident's Associate Administrator of Finance, a position that is the functional equivalent of a Chief Financial Officer ("CFO"), and reported to Provident's Chief Operating Officer. (Def.'s 56.1 ¶ 26; Pl.'s 56.1 ¶ 7.) Bell's responsibilities at Provident included the day-to-day supervision of Provident's financial operations. (Def.'s 56.1 ¶ 27.) Additionally, Bell was responsible for the development, interpretation, coordination and

administration of the organization's policies on finance, accounting, budget, data processing, patient accounting, medical records, internal controls and auditing. (Pl.'s 56.1 ¶ 7.) Bell was also responsible for maintaining records and procedures that were required to adequately safeguard Provident's assets and planning, organizing, coordinating and controlling its financial policies, receipt of revenue and expenditure of funds. (Pl.'s 56.1 ¶ 7.) Bell also reviewed, interpreted, analyzed and communicated financial reports and data to management and the board of trustees. (Pl.'s 56.1 ¶ 7.) Bell also ensured that all contracts that directly affected Provident's interests were properly reviewed. (Pl.'s 56.1 ¶ 7.) Finally, Bell was one of a few people who was an authorized signer of voucher forms and requisition and change orders on Provident's behalf. (Pl.'s 56.1 ¶ 7.) However, at no time did Bell have the authority to commit Cook County financially for services or goods that exceed $10,000 without prior approval of the County Board. (Def.'s 56.1 ¶ 28.) Bell resigned from his position at Provident effective April 1, 2001. (Def.'s 56.1 ¶ 29.)

The Cook County Purchasing Ordinance provides, in pertinent part, that:

> The Board of Commissioners of Cook County shall have no power or authority to delegate to any committee or other person or persons the "power to act", when such "power to act" shall involve the letting of any contract or the expenditure of public money exceeding the sum of $10,000.00; and any action of said board, or of any committee thereof, or of any other person or persons in violation of this section shall be null and void. No money shall be appropriated or ordered paid by said County Commissioners beyond the sum of $10,000.00, unless such appropriation shall have been authorized by a vote of at least two-thirds of the members elected to the said county board. And no officer of Cook County, or other person shall incur any indebtedness on behalf of the county, unless first authorized by said Board of Commissioners.

(Def.'s 56.1 ¶ 14.) The Cook County Purchasing Ordinance circumscribes the authority of the Board of Commissioners ("County Board") to spend Cook County's money. (Def.'s 56.1 ¶ 14.) For obligations that exceed $10,000, a department of Cook County must first seek authorization from

-4-

the County Board. (Def.'s 56.1 ¶ 15.) Regardless of the payment increment amount, if the whole subject of the obligation exceeds the $10,000 threshold, County Board authorization is required. (Def.'s 56.1 ¶ 15.)

After the County Board has authorized an obligation exceeding $10,000, the Cook County Purchasing Agent ("Purchasing Agent") either advertises for bids or enters into a sole source contract. (Def.'s 56.1 ¶ 16.) If there is an advertised bid, the department recommends the acceptance of a particular bid to the County Board. (Def.'s 56.1 ¶ 16.) The County Board then decides whether to approve the bid for contract. (Def.'s 56.1 ¶ 16.)

All Cook County contracts must have a purchase order number in order to be paid. (Def.'s 56.1 ¶ 19.) Vendors must fill out a Cook County voucher form referencing the purchase order number and may attach their own invoice form to the voucher form. (Def.'s 56.1 ¶ 20.)

If a contract relates to Provident as the department, Provident then checks the voucher form and certifies on that form that the request for payment complies with the contract terms, including but not limited to the amount, the contract time frame, and whether the service or good has been provided. (Def.'s 56.1 ¶ 21.) Provident then sends the voucher to the Cook County Comptroller's Office ("Comptroller's Office") for payment. (Def.'s 56.1 ¶ 21.) The Comptroller's Office checks the purchase order number on the voucher form, whether the payment is for over or under $10,000, to determine if there are sufficient funds assigned to that purchase order number. (Def.'s 56.1 ¶ 22.)

In October 1997, Capital City entered into an Accounts Receivable Purchase and Security Agreement with a company called Swerbeh, Ltd ("Swerbeh"). (Pl.'s 56.1 ¶ 8.) Mary Payne ("Payne") signed the agreement on behalf of Swerbeh as its president.(Def.'s 56.1 ¶ 34; Pl.'s 56.1 ¶ 8.) In a factoring transaction involving Swerbeh in May 1998, Bell was the "contact" person at

Provident. (Pl.'s 56.1 ¶ 8.) Bell signed a voucher form dated May 20, 1998, that approved payment to "Swerbeh, Ltd. c/o Capital City Financial Group". (Pl.'s 56.1 ¶ 9.)

JTD, Inc. ("JTD"), Third-Party Defendant, was a corporation providing temporary clerical services at all relevant times. (Def.'s 56.1 ¶ 3.) Payne was also the president of JTD at all relevant times. (Def.'s 56.1 ¶ 4.) On August 4, 1999, the County Board awarded Contract No. 99-54-647 ("the 1999 contract") to JTD for temporary clerical support services for Provident. (Def.'s 56.1 ¶ 30.) The 1999 contract authorized temporary clerical services by JTD from June 22, 1999 until June 20, 2000, in the amount of $37,450.00 based on 3,500 hours of services at a rate of $10.70 per hour. (Def.'s 56.1 ¶ 31.) The County Board approved no other contract with JTD. (Def.'s 56.1 ¶ 32.)

On August 15, 2000, Payne, on behalf of JTD, applied to Capital City for funding. (Def.'s 56.1 ¶ 35.) Capital City instructed Payne to contact Bell to verify the factored invoices because it deemed Bell to be the person to expedite payments. (Def.'s 56.1 ¶ 36.) Payne sent a letter dated August 28, 2000, via facsimile, to Bell at Provident informing Bell that JTD had entered into an arrangement for financing with Capital City whereby JTD's accounts receivable were to be assigned to and processed through Capital City. (Def.'s 56.1 ¶ 37.) Bell's signature on the letter indicates that the letter was faxed from Provident on September 1, 2000. (Def.'s 56.1 ¶ 38.)

On September 6, 2000, Capital City faxed Bell Invoice 32-018, a document prepared by Capital City dated August 30, 2000, that purports to represent services provided by JTD during the weeks ending August 6, 2002 to August 27, 2000, for a total amount of $173,256.20. (Def.'s 56.1 ¶ 39.) Capital City advanced to JTD $121,279.34 based on a 70% factor rate applied to the invoice amount. (Pl.'s Add. 56.1 ¶ 3.) Of this advance amount, $34,651.24 was deducted by Capital City at Payne's direction and applied to preexisting debt from Swerbeh on behalf of JTD. (Pl.'s Add. 56.1

¶ 3.)

On September 6, 2000, JTD and Payne sent Capital City a completed "Schedule A" that included backup materials for Invoice 32-018, indicating that JTD supplied Provident with approximately 66 workers per week who worked an aggregate of 2,190 to 2,298 hours per week. (Def.'s 56.1 ¶ 41.) Bell's signature appears on Invoice 32-018 with the date September 5, 2000. (Def.'s 56.1 ¶ 40.) For the receivables represented by Invoice 32-018, based on Bell's signature as the verifying officer of Provident, Capital City wire-transferred to Swerbeh, on behalf of JTD, $86,608.10 on September 7, 2000. (Def.'s 56.1 ¶ 42; Pl.'s Add. 56.1 ¶ 2.)

On October 12, 2000, JTD and Payne sent Capital City a completed "Schedule A" that included backup materials for Invoice 32-019, indicating that JTD supplied Provident with approximately 74 workers per week who worked an aggregate of 2,791 to 2,874 hours per week during the weeks ending September 3 to October 1, 2000. (Def.'s 56.1 ¶ 43.) Invoice 32-019 contained a return mailing address for Capital City in Indianapolis, Indiana. (Pl.'s 56.1 ¶ 5.) Capital City issued Swerbeh a check for $130,143.75 on October 12, 2000, for these receivables. (Def.'s 56.1 ¶ 44.)

On October 17, 2000, Capital City faxed Bell Invoice 32-019, a document prepared by Capital City dated October 6, 2000, that purports to represent services provided during the weeks ending September 3 to October 1, 2000, for a total amount of $260,287.50. (Def.'s 56.1 ¶ 45.) Bell signed and faxed Invoice 32-019 to Capital City on October 17, 2000. (Def.'s 56.1 ¶ 46.)
Denise Brooks of Capital City forwarded the October 12, 2000 verification for Invoice 32-019 to Capital City's general manager, William F. Brooks. (Pl.'s Add. 56.1 ¶ 8.) Based on Bell's signature as the verifying officer for Provident, Capital City issued its check no. 4914 to "Swerbeh/JTD" and

sent the check to Payne at JTD on October 13, 2000. (Pl.'s Add. 56.1 ¶ 9.)

The total amount of accounts receivable purchased by Capital City represented in Invoice 32-019 was $260,287.50. (Pl.'s Add. 56.1 ¶ 10.) Capital City advanced to JTD $181,201.25 based on a 70% factor rate applied to the invoice amount. (Pl.'s Add. 56.1 ¶ 10.) At Payne's direction, $52,057.50 was deducted by Capital City and applied to a preexisting debt owed by Swerbeh to Capital City. (Pl.'s 56.1 ¶ 10.)

On October 27, 2000, Payne wrote Bell, stating that a mistake had been made and that the total amount of the invoices for the period of August and September 2000 should have been $43,250.00. (Def.'s 56.1 ¶ 48.)

The representations in Invoices 32-018 and 32-019 made by JTD were false. (Pl.'s 56.1 ¶ 22.) The services purported to have been provided as reflected by those Invoices would have required the County Board's approval and a purchase order number. (Def.'s 56.1 ¶ 50.) It is not within the authority of the Purchasing Agent to obligate Cook County to the expenditures reflected in Invoices 32-018 and 32-019 absent specific County Board authorization or in payment increments of less than $10,000, since the whole obligation exceeds $10,000. (Def.'s 56.1 ¶ 51.)

There is no contract between Cook County and JTD or Capital City and no purchase order assigned for the services represented in Invoices 32-018 and 32-019. (Def.'s 56.1 ¶ 53.) There are no contracts between Cook County and JTD or Capital City and no purchase order number assigned other than Contract No. 99-54-647 with JTD. (Def.'s 56.1 ¶ 54.)

JTD provided no services at Provident between July 31, 2000 and October 6, 2000. (Def.'s 56.1 ¶ 59.) The individuals whose names appear on the "Schedule A" backup materials dated September 6, 2000 and October 12, 2000, did not work at Provident during the relevant period, were

never physically present on the dates listed, and could not have been physically accommodated at Provident given the physical plant, its size and maintenance requirements. (Def.'s 56.1 ¶ 60.)

The County Board did not approve payment on Invoices 32-018 and/or 32-019 either to JTD or Capital City. (Def.'s 56.1 ¶ 55.)

## DISCUSSION

Cook County moves for summary judgment on Count I, which states a claim for breach of contract, arguing that JTD had no contract with Cook County for the amounts it assigned to Capital City. Capital City does not contest Cook County's motion for summary judgment as to Count I.

Under Illinois law:

> [a]ll contracts for supplies, material and work for the County of Cook shall be let as herein provided. All contracts for supplies, material or work for Cook County shall be approved by the board of commissioners and signed by the president of the board, the county purchasing agent and the comptroller. Supplies shall be issued only on the requisition of the responsible officers of the county institutions now or hereafter established by law, approved by the county purchasing agent.

55 Ill. Comp. Stat. 5/5-36001 (2002). Illinois law also provides that:

> [i]f any Office, department, institution, or agency of the county government or officer or employee thereof shall purchase or contract for any supplies, materials, equipment or contractual services contrary to the provisions of this Division, or contrary to the rules and regulations made thereunder, such order or contract shall be void and of no effect, and if county funds shall have been paid out upon such order or contract, the amount thereof may be recovered in the name of the county in an appropriate action instituted therefor.

55 Ill. Comp. Stat. 5/5-36008 (2002). As was noted earlier, the Cook County Purchasing Ordinance provides that no person shall have the power to act when such power involves the expenditure of public money in a sum exceeding $10,000.00 and that such actions are null and void unless such expenditure was first authorized by the County Board.

"[A] municipality cannot be bound by a contract that does not comply with the prescribed conditions for the exercise of its power." *Ad-Ex, Inc. v. City of Chicago*, 207 Ill. App. 3d 163, 169 (1990). It is undisputed that the County Board approved a contract between Cook County and JTD in the amount of $37,450.00 for services to be rendered during the period beginning June 22, 1999 and ending June 20, 2000. Count I seeks payment for breach of a $433,543.70 contract between JTD and Cook County that was assigned to Capital City. However, it is undisputed that the County Board approved no other contract between JTD and Cook County; and Capital City has not presented any evidence that would establish the existence of such a contract between JTD and Cook County. In fact, the undisputed facts establish that JTD had no $433,543.70 obligation from Cook County to assign to Capital City. Payne wrote to Bell on October 27, 2000, and informed him that a mistake had been made and that the invoices for the claimed period only totaled $43,250.00. Furthermore, even if such a contract did exist, it would be null and void under sections 5-36001 and 5-36008 as well as under the Cook County Purchasing Ordinance because the amount of the contract exceeded $10,000.00.

Moreover, Bell had no authority to enter into a contract for such an amount on Cook County's behalf. "The general rule is that when an employee of a municipal corporation purports to bind the corporation by contract without prior approval, in violation of an applicable statute, such contract is utterly void." *City of Belleville v. Ill. Fraternal Order of Police Labor Council* ("*IFOP Labor Council*"), 231 Ill. App. 3d 561, 563 (2000). Here, the Cook County Purchasing Ordinance prohibits the delegation of the power to act "involv[ing] the letting of any contract or the expenditure of public money exceeding the sum of $10,000.00 " and Cook County officers from incurring indebtedness on behalf of Cook County without authorization from the County Board. It is

undisputed that the County Board did not authorize payment of the invoices that Capital City sent to Bell. Therefore, Cook County's motion for summary judgment is granted as to Count I.

Cook County moves for summary judgment on Count II, a claim for account stated, arguing that there is no genuine issue of material fact as to this claim. Capital City does not contest Cook County's motion for summary judgment as to Count II.

> An account stated is an agreement between parties who previously engaged in transactions that the account representing those transactions is true and the balance stated is correct, together with a promise for the payment of the balance. . . . "'An account stated only determines the amount of the debt where a liability exists, and cannot be made to create a liability *per se* where none before existed.'"

*Dreyer Med. Clinic v. Corral*, 227 Ill. App. 3d 221, 226 (1992) (quoting *Sexton v. Brach*, 124 Ill. App. 3d 202, 205 (1984)). As was noted above, Capital City has not presented any evidence of an enforceable contract between JTD and Cook County for the sum of $433,543.70 that was assigned to Capital City. Thus, there is no genuine issue of material fact as to whether there is an account stated; and, therefore, Cook County's motion for summary judgment is granted as to Count II.

Cook County moves for summary judgment on Count III, a misrepresentation claim.

In order to prove a "claim for fraudulent misrepresentation under Illinois law, [Capital City] must establish 1) that [Cook County] made a statement; 2) of a material nature; 3) which was untrue; 4) known by the person making it to be untrue, or made in culpable ignorance of its truth or falsity; 5) relied upon by [Capital City] to [its] detriment; 6) made for the purpose of inducing reliance; and 7) [Capital City's] reliance led to [its] injury." *Bensdorf & Johnson, Inc. v. Northern Telecom Ltd.*, 58 F. Supp. 2d 874, 881 (N.D. Ill. 1999) (citing *Doherty v. Kahn*, 682 N.E.2d 163, 167 (Ill. App. Ct. 1997)). "[T]he reliance by [Capital City] must be justified, i.e., [it] must have had a right to rely." *Soules v. Gen. Motors Corp.*, 79 Ill. 2d 282, 286 (1980). Capital City's motion for summary

judgment on Count III must be denied if it fails to meet this burden. *Angelos*, 839 F.2d at 369.

Capital City moves for summary judgment on Count III, arguing that (1) it reasonably relied on Bell's misrepresentations and (2) Bell had actual authority to verify financial matters regarding Cook County. Capital City maintains that Bell made a material statement, i.e., that the contract had been *approved* by the County Board which he knew to be untrue or made with culpable ignorance as to its truth and that it relied on the statement to its detriment.

The County argues that: (1) Capital City cannot establish that the representations were made by Cook County and (2) Capital City's reliance was unreasonable due to the ordinance and statutes cited above which limit Cook County employees' authority.

It is undisputed that: (1) Bell made a statement verifying that the debt existed and that Cook County would pay the debt, (2) this statement was untrue, and (3) Capital City relied to its detriment on this statement by advancing funds to JTD.

Cook County asserts that there is a material issue of fact as to whether Bell knew his statement was untrue. However, the Court may draw the inference that Bell knew his statement to be untrue or was made with culpable ignorance from his refusal to speak under *Central States, Southeast & Southwest Areas Pension Fund v. Wintz Properties, Inc.*, 155 F.3d 868 (7th Cir. 1998). In *Wintz Properties*, the Fund sued Wintz and the company of which he was the president for failing to pay withdrawal liability required under ERISA. 155 F.3d at 870. The district court ordered Wintz to pay the withdrawal liability, but he did not. *Wintz Properties, Inc.*, 155 F.3d at 871. In a hearing before the district court, Wintz asserted his Fifth Amendment right rather than testify regarding the issue of whether his company was financially able to make the court-ordered payment. *Wintz Properties, Inc.*, 155 F.3d at 872. The Court of Appeals for the Seventh Circuit held that "invoking

the Fifth Amendment in a civil context invites an inference that the witness' testimony would be adverse to his interest." *Wintz Properties, Inc.*, 155 F.3d at 872 (citing *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976)). Here, Bell invoked the Fifth Amendment during his deposition. Thus, this Court is entitled to draw an inference that his testimony would have been adverse to his interest, i.e., that he knew the statement to be false or made the statement in culpable ignorance as to its truth of falsity. In addition, Bell's position as CFO of Provident with the attendant duties and responsibilities further supports this inference.

Moreover, Capital City was not relying on whether Bell had the authority to bind Cook County to a *contract* in excess of $10,000 but rather on Bell's authority to represent that such an obligation had been *approved* by the County Board.

Therefore, Cook County's reliance on the statutes and ordinances limiting Bell's authority to *contract* on behalf of the County Board is misplaced.

There exists, however, a genuine issue of material fact as to whether Capital City's reliance on Bell's misrepresentations was justified. "[I]n order to avoid summary judgment, [Capital City] must set forth enough facts from which a jury could find by clear and convincing evidence that it was justified in relying on [Cook County's] alleged misrepresentation." *Teamsters Local 282 Pension Trust Fund v. Angelos*, 839 F.2d 366, 369 (7th Cir. 1988). Regarding Bell's assertion of the County Board's approval, the Court must view "the representation in light of all the facts of which [Capital City] had actual knowledge as well as those of which [it] 'might have availed [it]self by the exercise of ordinary prudence.'" *Soules*, 79 Ill. 2d at 286 (quoting *Schmidt v. Landfield*, 20 Ill. 2d 89, 94 (1960)). While the Cook County Purchasing Ordinance and sections 5-36001 and 5-36008 limit Bell's authority to bind Cook County, neither the ordinance nor sections 5-36001 and 5-36008 regard

-13-

verification as to whether an expenditure had been approved by the County Board. Moreover, prior to the invoices at issue in this case, Capital City had factored accounts receivable from Swerbeh, JTD's predecessor, in May 1998, which were verified by Bell on behalf of Provident and apparently paid by Cook County. Thus, there is a genuine issue of material fact as to whether Capital City's reliance was reasonable. Therefore, Capital City's motion for summary judgment on Count III is denied, and Cook County's motion for summary judgment on Count III is denied.

## CONCLUSION

For the reasons stated herein, Capital City Financial Group's Motion for Partial Summary Judgment is denied; and Cook County's Motion for Summary Judgment is granted as to Counts I and II and denied as to Count III.

**IT IS SO ORDERED.**

John W. Darrah, Judge
United States District Court

Date: October 16, 2002